IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| JJD ELECTRIC, LLC, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No. 22-1275 (KMW/MJS) |
| | : | **OPINION** |
| SUNPOWER CORPORATION, | : | |
| SYSTEMS *et al.*, | : | |
| Defendants. | : | |

**WILLIAMS,** United States District Judge:

**THIS MATTER** comes before the Court upon several pending motions: (1) Defendant

SunPower Corporation, Systems' ("SunPower") Motion to Dismiss the First Amended

Complaint or, in the alternative, for Partial Summary Judgment ("SunPower's Motion to

Dismiss" or "SunPower Mot. Dismiss") (ECF No. 48); (2) Defendant SunPower's Motion to

Seal ("SunPower Mot. Seal") (ECF No. 49); and (3) Defendant TotalEnergies Distributed

Generation USA, LLC's ("TotalEnergies") Motion to Dismiss the First Amended Complaint

("TotalEnergies' Motion to Dismiss" or "TotalEnergies Mot. Dismiss") (ECF No. 50).

For the reasons set forth below, Defendant SunPower's Motion to Dismiss (ECF No. 48)

is **GRANTED in part** and **DENIED in part**; Defendant SunPower's Motion to Seal is

**GRANTED**; and Defendant TotalEnergies' Motion to Dismiss (ECF No. 50) is **GRANTED in**

**part** and **DENIED in part**.

1

## I.     INTRODUCTION

### A.     Factual Background

Plaintiff JJD Electric LLC ("Plaintiff" or "JJD Electric") alleges that Defendant SunPower contracted with the Delaware River Port Authority ("DRPA") to construct and install "certain solar power generation and storage equipment at various DRPA locations in southern New Jersey." (ECF No. 41, Am. Compl. ¶¶ 7–8). Defendant SunPower hired Plaintiff as a subcontractor, by way of a Subcontract Agreement (the "Subcontract") dated May 18, 2020, which required Plaintiff to "provide certain electrical contracting services in connection with the installation of power equipment" at the various project locations. (*Id.* ¶¶ 10–12). Plaintiff alleges that "[t]he total balance due from SunPower to JJD for the electrical work performed but unpaid is estimated to be approximately $2 million, including retainage, plus delay damages in the approximate amount of $4 million." (*Id.* ¶ 19).

### B.     Procedural History

On January 20, 20222, Plaintiff filed its initial Complaint in the Superior Court of New Jersey, Camden County. (ECF No. 1-3). Defendants SunPower and Solar Star were each served on February 7, 2022. (ECF No. 1, Notice of Removal, Exs. 12–13). On March 9, 2022, exactly thirty days later, Defendants SunPower and Solar Star properly removed to this Court. (Notice of Removal ¶¶ 10–33). On March 16, 2022, Defendant Solar Star filed a motion to dismiss. (ECF No. 11). On April 11, 2022, Defendant SunPower filed a motion to dismiss and compel arbitration. (ECF No. 17). On April 19, 2022, the parties stipulated to three things: (1) the dismissal of Defendant Solar Star, (ECF No. 19); (2) the case being stayed "pending the conclusion of mediation and arbitration," (ECF No. 22); and (3) the withdrawal, without prejudice, of Defendant SunPower's motion to dismiss and compel arbitration. (*Id.*)

2

On or about August 29, 2022, while the case was still stayed pending the conclusion of arbitration, Plaintiff received notice that Defendant SunPower had assigned the Subcontract to Defendant TotalEnergies as part of an equity sale that closed on May 31, 2022. (Am. Compl. ¶ 35). On March 3, 2023, Plaintiff filed an Amended Complaint without seeking leave of Court that sought to add Defendant TotalEnergies as a party and to assert new claims against both it and Defendant SunPower. (ECF Nos. 32–33). In an Order and Opinion entered on September 1, 2023, Magistrate Judge Matthew J. Skahill denied in part and granted in part leave to file an Amended Complaint. (ECF No. 40, Judge Skahill Order & Op.). Pursuant to that Order and Opinion, Plaintiff was permitted to raise only the claims declared to be non-futile against Defendant SunPower and Defendant TotalEnergies in its renewed Amended Complaint. (*Id.* at 16). On September 7, 2023, Plaintiff re-filed the Amended Complaint in accordance with Judge Skahill's directives. (ECF No. 41, Am. Compl.).

On October 24, 2022, Defendant SunPower filed two motions: (1) a Motion to Dismiss or, in the alternative, for Partial Summary Judgment (ECF No. 48, SunPower Mot. Dismiss); and (2) a Motion to Seal. (ECF No. 49, Mot. Seal). On the same day, Defendant TotalEnergies filed a Motion to Dismiss. (ECF No. 50, TotalEnergies Mot. Dismiss). On December 22, 2023, Plaintiff filed opposition to each of the Defendant's pending Motions. (ECF No. 56, Opp. Br. TotalEnergies Mot. Dismiss; ECF No. 57, Opp. Br. SunPower Mot. Dismiss). On January 29, 2024, Defendant TotalEnergies filed a reply brief in support of its Motion to Dismiss, (ECF No 58, TotalEnergies Reply Br.), and Defendant SunPower also filed a reply brief in support of its Motion to Dismiss. (ECF No. 60, SunPower Reply Br.). Also on that date, Defendants filed a Memorandum informing the Court that its Motion to Seal was unopposed. (ECF No. 59, Defs.' Mem.). The pending Motions are fully briefed and ripe for review.

## II.    JURISDICTION

The Court has subject-matter jurisdiction pursuant to the federal diversity and removal statutes. *See* 28 U.S.C. §§ 1332(a) and 1441. As discussed, Defendants timely removed from the Superior Court of New Jersey, Camden County, on March 9, 2022, alleging jurisdiction under § 1332(a) by claiming complete diversity of citizenship and an amount in controversy exceeding $75,000.[1] (Notice of Removal ¶¶ 10–33). Plaintiff is a limited liability company whose only two members are each citizens of New Jersey.[2] (*Id.* ¶ 11; Am. Compl. ¶ 1). Defendant SunPower is a citizen of Delaware and California.[3] (Notice of Removal ¶ 12; Am. Compl. ¶ 2). Defendant TotalEnergies is a citizen of Delaware and Texas.[4] (Am. Compl. ¶ 3). The parties do not contest personal jurisdiction, amount-in-controversy, or diversity of citizenship. Because this matter was properly removed and the citizenship and amount-in-controversy requirements for diversity jurisdiction are met, the Court has subject-matter jurisdiction to adjudicate this dispute.

---

[1] Plaintiff seeks to recover a balance of "approximately $2 million for work performed" and "additional damages of just over $4 million." (Am. Compl. 2–3).

[2] Plaintiff is a limited liability company whose sole members, James J. Daloisio and Christopher Daloisio, are citizens of New Jersey. (Notice of Removal ¶ 11; Am. Compl. ¶ 1). *See Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 415, 418–19 (3d Cir. 2010) (holding that "the citizenship of an LLC is determined by the citizenship of each of its members" and that a natural person "is deemed to be a citizen of the state where he is domiciled") (cleaned up).

[3] Defendant SunPower is a corporation incorporated in Delaware and with its principal place of business in San Jose, California. (Notice of Removal ¶ 12; Am. Compl. ¶ 2). *See Zambelli Fireworks*, 592 F.3d at 419 ("A corporation is a citizen both of the state where it is incorporated and of the state where it has its principal place of business.") (citing 28 U.S.C. § 1332(c)).

[4] Defendant TotalEnergies is a Delaware limited liability company with its principal place of business in Houston, Texas, and whose sole members are citizens of Texas. (Am. Compl. ¶ 3).

### III.    LEGAL STANDARD

#### A.    Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A complaint survives a motion to dismiss if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To make this determination, courts conduct a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 680). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (quoting *Iqbal*, 556 U.S. at 678). Third, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

#### B.    Motion to Seal

Requests to seal are governed by New Jersey Local Civil Rule 5.3, which provides, in pertinent part, that a request to seal must be presented by motion, and that the motion papers must describe "(a) the nature of the materials or proceedings at issue, (b) the legitimate private or

public interests which warrant the relief sought, (c) the clearly defined and serious injury that would result if the relief sought is not granted, and (d) why a less restrictive alternative to the relief sought is not available." L. Civ. R. 5.3(c)(2).

Although there is a well-established "common law public right of access to judicial proceedings and records," *In re Cendant Corp.*, 260 F.3d 183, 192 (3d Cir. 2001), "[i]n order to overcome this presumption of a public right of access, the movant must demonstrate that 'good cause' exists for the protection of the material at issue." *Securimetrics, Inc. v. Iridian Techs., Inc.*, Civ. No. 03-4394, 2006 WL 827889, at *2 (D.N.J. Mar. 30, 2006). Good cause exists when a party makes a particularized showing that disclosure will cause a "clearly defined and serious injury to the party seeking closure." *Id.* (citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994)). Specifically, the movant must prove that the information is confidential in nature and that allowing the general public to access the information will cause a specific and serious injury. *Pansy*, 23 F.3d at 788. "'Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning,' do not support a good cause showing." *Id.* at 786 (citing *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986)).

## IV.   DISCUSSION

There are three pending Motions before the Court: Defendant SunPower's Motion to Dismiss, (ECF No. 48); Defendant SunPower's Motion to Seal, (ECF No. 49); and Defendant TotalEnergies' Motion to Dismiss, (ECF No. 50).

### A.   Defendant SunPower's Motion to Seal

Defendant SunPower seeks to seal portions of two documents relating to the DRPA's phasing plan for the solar-power installation project at issue. *See* (Mot. Seal, Ex. 1, Local Rule 5.3(c) Index (listing ECF Nos. 48-13, Ex. D-2; 48-15, Ex. D-4)). Defendant SunPower filed the

exhibits at issue under temporary seal, attesting that "they show the design and layout of the DRPA's electrical power generation and distribution network at its public train stations and bridge crossings, which can expose and raise potential vulnerabilities concerning the same." (Mot. Seal, Decl. Derrick R. Freijomil ¶ 8). Defendant SunPower's Motion to Seal is unopposed. *See* (ECF No. 59, Defs.' Mem.). Nevertheless, Defendant SunPower's request must meet each of the four prerequisites for seal under Local Civil Rule 5.3.

First, the Motion clearly describes the nature of the materials at issue, thus meeting the first prerequisite. *See generally* (Mot. Seal, Decl. Derrick R. Freijomil; Local Rule 5.3(c) Index). Next, Defendant SunPower avers that the confidentiality of the documents "is reinforced by the provisions of the Subcontract, which states 'Confidential information includes, without limitation, this Agreement and exhibits hereto.'" (Mot. Seal ¶ 9 (quoting ECF No. 48-12, Ex. D-1, Bettencourt Decl. arts. 1C, 37)). If the plans were unsealed, Defendant SunPower argues, "it would provide third parties (and potentially nefarious actors) access to proprietary, confidential, and sensitive information belonging to the DRPA, which could adversely affect the public health, welfare, and safety in the future, and/or result in disruption to the DRPA's critical infrastructure and electrical generation and distribution network." (*Id.* ¶ 12). Defendant SunPower alleges further that neither it nor Plaintiff has the consent of the DRPA to publicly disseminate the information in the exhibits. (*Id.* ¶ 11). In this way, the Court finds that Defendant SunPower has established legitimate private and public interests which warrant the relief sought and that it has clearly defined the serious injury that would result if the relief sought were not granted. *See* L. Civ. R. 5.3(c)(2). The second and third prerequisites are thus met.

Finally, the Court agrees that there is no less restrictive alternative to filing the information under seal because the parties only seek to seal portions of the documents. *See* (*id.*

¶ 1). The Court also finds that there is "good cause" to protect the confidential information from disclosure, as Defendant SunPower has "clearly defined" the "serious injury" that would occur if the material were to be disclosed. *See Securimetrics, Inc.*, 2006 WL 827889, at *2; *Pansy*, 23 F.3d at 786. The fourth prerequisite is met, and we grant the Motion to Seal in its entirety.

**B.    Defendant SunPower's Motion to Dismiss**

Defendant SunPower also seeks dismissal of all six Counts alleged in Plaintiff's Amended Complaint, or, in the alternative, partial summary judgment as to the payment portion of Plaintiff's breach-of-contract claim and Counts IV and V. Because we agree with Plaintiff that the factual record is insufficiently developed "as to justify summary judgment at this early stage prior to commencement of any discovery," (Opp. Br. SunPower Mot. Dismiss 1), we decline Defendant SunPower's request for partial summary judgment at this stage and review each Count under the motion-to-dismiss standard. *See Dowling v. Philadelphia*, 855 F.2d 136, 139 (3d Cir. 1988) ("The court is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery."); *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) (emphasizing that Rule 56 allows for denial of summary judgment motions "if the nonmoving party has not had an opportunity to make full discovery").

> ### i.    *Count I: New Jersey Prompt Payment Act*

Plaintiff first brings a claim against Defendant SunPower under the New Jersey Prompt Payment Act ("PPA"), N.J. Stat. Ann. 2A:30A-2 *et seq.* The subsection of the Act regulating the timing of payments between contractors and subcontractors states, in relevant part:

> If a subcontractor . . . has performed in accordance with the provisions of its contract with the prime contractor . . . and the work has been accepted by the owner, the owner's authorized approving agent, or the prime contractor, as applicable, and the parties have not otherwise agreed in writing, the prime contractor shall pay to its subcontractor . . . within 10 calendar days of the receipt of each periodic payment, final payment or receipt of retainage monies, the full

amount received for the work of the subcontractor . . . based on the work completed or the services rendered under the applicable contract.

N.J. Stat. Ann. § 2A:30A-2(b).

Courts have struggled to determine the precise elements of a cause of action under this subsection of the Act. *See Nan, Inc. v. Wood Env't & Infrastructure Sols., Inc.*, Civ. No. 21-707, 2022 WL 317084, at *5 (D.N.J. Feb. 2, 2022) ("Virtually no caselaw exists that elucidates the elements of a cause of action under this subsection or the Act writ large."); *Refine Tech., LLC v. MCC Dev., Inc.*, No. 17-5548, 2018 WL 3159874, at *5 (D.N.J. Feb. 21, 2018) (noting that "[f]ew courts have discussed the required elements of a [PPA] claim"). Based on the plain language of the Act and following the guidance of other courts in this District, however, the four elements to state a cause of action under subsection (b) of the PPA appear to be:

(1) The subcontractor has performed contractual work for the prime contractor;
(2) The contractual work has been approved by the owner, the owner's agent, or the prime contractor;
(3) The prime contractor and subcontractor have not otherwise agreed to terms of payment in writing; and
(4) The prime contractor has not paid the subcontractor within ten calendar days of receipt of a proper invoice.

*See Nan*, 2022 WL 317084, at *5 (citing N.J. Stat. Ann. § 2A:30A-2(b); *Refine Tech., LLC*, 2018 WL 3159874, at *5 (finding similar elements under subsection (a) of the Act)).

Defendant SunPower argues that "the PPA is designed as a default-provision where 'the parties have not otherwise agreed [to terms of payment] in writing.'" (SunPower Mot. Dismiss 9) (quoting N.J. Stat. Ann. 2A:30A-2(b)). In support, it cites the district court's review of the legislative intent of the PPA in *Hagen Constr., Inc. v. Whiting-Turner Contracting Co.*, Civ. No. 17-6969, 2018 WL 1918470, at *4 (D.N.J. Apr. 24, 2018) (stating that, in passing the PPA, the New Jersey Legislature "(1) allowed parties to contract around the provisions of the [PPA] and (2) did not set even a minimum standard for payment in the event parties contracted around the

statute" and that, as a result, the PPA "appears to be a form of gap-filling legislation that contemplates that sophisticated parties in large segments of the economy will enter into enforceable arms-length agreements that contain terms far different than the ones the statute provides in the absence of such agreements"). Defendant argues that the "plain meaning" of the statute as laid out in *Nan* should control. *See* 2022 WL 317084, at \*5.

Plaintiff refutes this interpretation of the statute, arguing that it is "unlikely that the Legislature enacted the PPA to apply to such a small percentage of construction contracts." (Opp. Br. SunPower Mot. Dismiss 10). Rather, the PPA was "intended to apply in instances of nonpayment by the prime contractor based upon the contractual terms agreed to by the prime contractor." (*Id.*). Plaintiff argues that the district court in *Kitchen & Assocs. Servs., Inc. v. Haven Campus Communities*, Civ. No. 19-10995, 2022 WL 15443746 (D.N.J. Oct. 27, 2022), declined to follow *Nan* because it awarded default judgment on a different claim. (Opp. Br. SunPower Mot. Dismiss 9–10). But this elides the fact that the *Kitchen* court cited—and appeared to endorse—*Nan*'s finding that the statute "only controls when . . . the parties to a contract 'have not otherwise agreed to terms of payment in writing.'" *Id.* at \*3 n.6 (quoting *Nan*, 2022 WL 317084, at \*5). Acknowledging Plaintiff's claim that there are indeed few cases in this District that discuss the ambit of subsection (b) of the PPA, *see* (Opp. Br. SunPower Mot. Dismiss 10), we nevertheless join the other courts in this District and adhere to the plain meaning of the statute as set forth in *Nan*.

Here, the Subcontract between Plaintiff and Defendant SunPower makes clear how payments would be addressed and withheld, and how other contractual obligations would be fulfilled by the parties. *See, e.g.*, (ECF No. 48-12, Ex. D-1, Subcontract arts. 8, 9, 15, 30). Significantly, the Subcontract also states that the balance of the amount of each payment request

"shall be due and paid to Subcontractor within forty-five (45) days after SunPower receives the applicable payment request for Subcontractor's Work and the payment conditions described in Article 7 are satisfied in full." (*Id.* art. 5). In this way, the Subcontract's payment terms closely mirror those of *Nan*, in which the parties also agreed to a forty-five-day payment schedule. *See* 2022 WL 317084, at *5. The *Nan* court found that agreement to be sufficient to preclude a claim under the PPA. *See id.* ("A review of the contracts between [the plaintiff] and [the defendant] show that the parties agreed to their own payment schedule.").

The same reasoning applies in this case. Accordingly, because the Subcontract makes clear that Plaintiff and Defendant SunPower "otherwise agreed to terms of payment in writing," *see* N.J. Stat. Ann. § 2A:30A-2(b), and because the PPA is clear that contracting parties' prior payment terms control, Plaintiff's PPA claim must fail. We therefore dismiss Count I.

### ii.        *Count II: Breach of Contract*

To prevail on a claim for breach of contract in New Jersey, a plaintiff must prove four elements: first, that the parties entered into a contract containing certain terms; second, that the plaintiff did what the contract required them to do; third, that the defendant did not do what the contract required them to do, defined as a breach of the contract; and fourth, that defendant's breach, or failure to do what the contract required, caused a loss to the plaintiff. *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016) (citations and internal quotation marks omitted) (citing *Model Jury Charge (Civil)* § 4.10A (May 1998)).

Plaintiff alleges that Defendant SunPower "failed to perform and/or failed to timely perform its material obligations under the Subcontract." (Am. Compl. ¶ 52). Specifically, Plaintiff claims two distinct breaches: (1) that "[n]otwithstanding SunPower's receipt of the approved invoices for payment . . . SunPower has not paid JJD for all its completed electrical

11

work and change order work" (the "Payment Claim"); and (2) that Defendant SunPower failed to approve or execute certain change orders that it requested, "which caused interruption and delays of JJD's performance of the work" (the "Delay Claim"). (*Id.* ¶¶ 31–32). We address each breach-of-contract claim in turn.

a.    <u>Payment Claim</u>

Defendant SunPower argues that Plaintiff failed to plead satisfaction of certain conditions precedent and that, accordingly, each claim is precluded by the explicit terms of the Subcontract. (SunPower Mot. Dismiss 10). Specifically, it alleges that the Subcontract mandated "as conditions precedent to each payment" that an unconditional lien waiver be provided for any and all prior payments made. *See* (*id.* at 11 (citing Subcontract art. 7)). It claims that payment was only due to Plaintiff after "the payment conditions described in Article 7 . . . are satisfied in full." *See* (*id.* (citing Subcontract art. 5)). In this way, Defendant SunPower essentially points out that Plaintiff fails to meet the second element of its prima facie case: "that the plaintiff did what the contract required them to do." *See Globe Motor Co.*, 139 A.3d at 64.

Plaintiff argues that SunPower's "material misrepresentations and omissions preclude the dismissal of JJD's claims on the basis of the claimed failure to allege satisfaction of conditions precedent." (Opp. Br. SunPower Mot. Dismiss 14). Specifically, it argues that its provision of an unconditional lien waiver was "rendered impossible due to Defendant SunPower's failure to pay Plaintiff for the amounts owed for work performed on the Project." (*Id.* at 15). Plaintiff's claims of "impossibility," however, are directly refuted by the record.

Plaintiff admitted in its Amended Complaint that the signed releases "were in possession of JJD's attorney pending discussions with SunPower's counsel regarding long overdue unpaid invoices for approved work." (Am. Compl. 2). It cannot claim that it was "impossible" to uphold

12

its obligation under the Subcontract purely in order to sustain a cause of action for breach of

contract. Accordingly, because Plaintiff failed to do "what the contract required them to do," *see*

*Globe Motor Co.*, 139 A.3d at 64, it cannot meet the second element for breach-of-contract as to

the Payment Claim. The Payment Claim thus fails.

b.     Delay Claim

Defendant argues that Plaintiff's Delay Claim is also barred by the express terms of the

Subcontract for two reasons: (1) the Subcontract only permits an extension of time for delay; and

(2) the parties waived any right to "consequential, incidental, special, or punitive damages" in

the Subcontract. *See* (SunPower Mot. Dismiss 13) (citing Subcontract, arts. 9, 30).

Article 9 of the Subcontract states that "[Plaintiff] shall be entitled to an extension of

time" should it "be delayed, obstructed, hindered, or interfered with in the commencement,

prosecution or completion of the Work." Plaintiff argues that it is not seeking damages for denial

of any extension of time that it requested; rather, its damages arise from "SunPower's breach (at

the Project's inception) of its obligation to provide an appropriate schedule of work of various

subcontractors, including those whose work had to be completed in advance of JJD's." (Opp. Br.

SunPower Mot. Dismiss 17). Plaintiff's assertion, however, that "there is no provision explicitly

stating that JJD is not entitled to damages for delays caused by SunPower," (*id.*), is incorrect

when read together with Article 30 of the Subcontract.

Article 30 states, in relevant part:

> Notwithstanding any provision to the contrary, in no event may SunPower be
> liable to Subcontractor, its agents, assigns, insurers, subrogee, affiliates, parent
> company, shareholders, or directors for any **consequential**, incidental, special, or
> punitive damages. Subcontractor expressly agrees to indemnify, defend, and hold
> harmless SunPower for any claim alleging **consequential**, incidental, special, or
> punitive damages brought by Subcontractor, or any agents, assign, insurer,
> subrogee, affiliate, parent company, shareholder, or director of Subcontractor.

13

(Subcontract art. 30) (emphases added). Here, consequential damages encompass the type of harm that Plaintiff alleges—namely, "interruption and delays of JJD's performance of the work." (Am. Compl. ¶ 32); *see Carolee, LLC v. eFashion Sols.*, LLC, Civ. No. 12-2630, 2013 WL 5574594, at *6 (D.N.J. Oct. 9, 2013) (noting that "additional payments to contractors due to delay" may be considered "consequential damages prohibited by the limitation of damages provision in the parties' contract" (quoting *Atl. City Assocs., LLC, v. Carter & Burgess Consultants, Inc.*, 453 F. App'x 174, 178 (3d Cir. 2011))).

Accordingly, because the Subcontract explicitly bars recovery of consequential damages, Plaintiff's Delay Claim must fail. We therefore dismiss Count II in its entirety.

### iii.   *Count III: Breach of the Implied Covenant of Good Faith and Fair Dealing*

In New Jersey, every contract contains an implied covenant of good faith and fair dealing. *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assoc.*, 864 A.2d 387, 395 (N.J. 2005). The covenant "mandates that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Seidenberg v. Summit Bank*, 791 A.2d 1068, 1074 (N.J. Super. Ct. App. Div. 2002) (internal citations and quotation marks omitted). "A party breaches the implied covenant when it exercises its contractual functions arbitrarily, unreasonably, or capriciously and with an improper motive." *Wilmington Sav. Fund Soc'y, FSB v. Daw*, 265 A.3d 178, 187 (N.J. Super. Ct. App. Div. 2021) (internal citations and quotation marks omitted). Generally, New Jersey courts define good faith as "honesty in fact and the observance of reasonable conduct that does not violate community standards of fair dealing in the trade." N.J. Stat. Ann. 12A:2–103(1)(b).

"There is no universally accepted test for establishing a breach of the duty of good faith and fair dealing," but two elements appear with some frequency: (1) the defendant acts in bad

faith or with a malicious motive to (2) deny the plaintiff some benefit of the bargain originally intended by the parties, even if that benefit was not an express provision of the contract. *Soltis v. Catalent Pharma Sols.*, Civ. No. 23-567, 2023 WL 6990785, at *4 (D.N.J. Oct. 23, 2023) (citing *Brunswick Hills Racquet Club, Inc.*, 864 A.2d at 396). "[W]hen the terms of the parties' contract are clear, the implied covenant of good faith and fair dealing will not override the contract's express language." *Fields v. Thompson Printing Co.*, 363 F.3d 259, 271–72 (3d Cir. 2004).

Bad faith cannot be inferred from pre-contract acts. *See Luongo v. Vill. Supermarket, Inc.*, 261 F. Supp. 3d 520, 532 (D.N.J. June 2, 2017) ("[I]n the absence of a contract, there can be no breach of an implied covenant of good faith and fair dealing." (quoting *Noye v. Hoffmann–La Roche Inc.*, 570 A.2d 12, 14 (N.J. Super. Ct. App. Div. 1990)). Accordingly, we do not address the aspects of Plaintiff's claim regarding Defendant SunPower's allegedly false representations of the project timeline or Defendant SunPower's failure to provide Plaintiff with details concerning the project's phasing plan because each alleged act occurred prior to the Subcontract's execution. (Am. Compl. ¶¶ 57–58).

Plaintiff argues that Defendant SunPower represented that "any harm to JJD caused by the scheduling issues and resulting interruptions and delays would be addressed through change orders for JJD's work under the Subcontract." (*Id.* ¶ 61). Plaintiff further alleges that Defendant SunPower "failed to execute all but a fraction of the change orders necessary to address the interruptions and changes" in the project like it had promised Plaintiff. (*Id.* ¶ 62). As a result, Plaintiff argues, Defendant SunPower "denied JJD the benefit of its bargain under the Subcontract." (*Id.* ¶ 63).

As Defendant SunPower points out, however, Plaintiff fails to mention how any of these actions are indicative of bad faith. *See* (SunPower Mot. Dismiss 16). Notwithstanding Plaintiff's

allegations that Defendant SunPower declined to issue as many change orders as it could have to redress alleged interruptions and changes in the phasing plan, nowhere does Plaintiff explain how or whether Defendant SunPower did so "arbitrarily, unreasonably, or capriciously and with an improper motive." *See Wilmington Sav. Fund Soc'y, FSB*, 265 A.3d at 187. Accordingly, because Plaintiff fails to sufficiently plead Defendant SunPower's bad faith, its claim for breach of the covenant of good faith and fear dealing must be dismissed.

> ### iv.     Counts IV–V: Fraudulent Misrepresentation, Fraudulent Inducement, and Negligent Misrepresentation

Next, Defendant SunPower seeks dismissal of Plaintiff's claims of fraudulent misrepresentation, fraudulent inducement, and negligent misrepresentation encompassing Counts IV and V in Plaintiff's Amended Complaint.

"Under New Jersey law, the elements required to establish a claim of common law fraud, fraudulent misrepresentation, and fraudulent inducement are identical." *Oliver v. Bank of Am., N.A.*, Civ. No. 13-4888, 2014 WL 562943, at *2 (D.N.J. Feb. 11, 2014) (quoting *Prudential Ins. Co. of Am. v. Goldman, Sachs & Co.*, Civ. No. 12-6590, 2013 WL 1431680, at *7 (D.N.J. Apr. 9, 2013)). To establish a cause of action for these claims, "a plaintiff must plead '(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.'" *Id.* (quoting *Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 260 (N.J. 2005)). A claim for negligent misrepresentation requires these same elements "absent the requirement of scienter." *McCash v. Tamir Biotechnology, Inc.*, Civ. No. 17-2721, 2017 WL 3593127, at *8 (D.N.J. Aug. 21, 2017).

Federal Rule of Civil Procedure 9(b) also imposes a heightened pleading standard: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting

16

fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *see also IDT Domestic Telecom, Inc. v. Crumpler*, Civ. No. 22-1947, 2023 WL 1360404 (D.N.J. Jan. 31, 2023). To satisfy Rule 9(b), "a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" *Id.* (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2004)) (alteration in original). "A 'plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.'" *Id.* (quoting *Frederico*, 507 F.3d at 200).

Judge Skahill's September 1, 2023, Order and Opinion included a futility analysis of Plaintiff's fraud claims as pleaded in the proposed Amended Complaint. *See* (Judge Skahill Order & Op. 10–14). Assessing the futility of claims in a proposed complaint mirrors the motion-to-dismiss standard for failure to state a claim. *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) ("In assessing 'futility,' the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6).") (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). After reviewing Plaintiff's pleaded facts against the required elements for fraud as well as the heightened Rule 9(b) pleading standard, Judge Skahill found that Plaintiff had successfully pleaded the fraud claims at issue. *See* (Judge Skahill Order & Op. 12 ("The Court finds that Plaintiff has sufficiently pleaded a claim of fraud, fraudulent inducement, and fraudulent misrepresentation.")). Judge Skahill also found that Plaintiff had successfully pleaded a claim for negligent misrepresentation. (*Id.* at 14 ("[T]he Court also finds that Plaintiff has sufficiently asserted a claim of negligent misrepresentation against SunPower.")).

The Court agrees with Judge Skahill's findings as to the viability of these claims, and we adopt and incorporate by reference his analysis for purposes of the present Motion. In so doing, we find that Plaintiff has successfully pleaded claims of fraud, fraudulent inducement, fraudulent inducement, and negligent misrepresentation. Counts IV and V of Plaintiff's Amended Complaint thus survive, and we deny Defendant SunPower's Motion as to those claims.

*v.*   *Count VI: Unjust Enrichment*

Finally, Plaintiff alleges that Defendant SunPower "benefited from service performed and materials supplied by" Plaintiff and that it "failed to make any payment of the amounts owed." (Am. Compl. ¶¶ 83–84). Plaintiff pleads unjust enrichment "as an alternative to breach of contract" because it argues that the validity of the Subcontract is in dispute. (Opp. Br. SunPower Mot. Dismiss 31; Am. Compl. ¶ 85 ("In the alternative, JJD seeks payment from SunPower because SunPower has been unjust enriched [sic] by its failure to provide payment to JJD.")).

Federal Rule of Civil Procedure 8 provides for pleading in the alternative. *See* Fed. R. Civ. P. 8(a)(3) (stating that demand for the relief sought "may include relief in the alternative or different types of relief"); Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones."). The Third Circuit allows for pleading in the alternative when a plaintiff brings claims for both breach of contract and unjust enrichment, so long as the "the validity of the contract itself is actually disputed, making unjust enrichment a potentially available remedy." *Grudkowski v. Foremost Ins. Co.*, 556 F. App'x 165, 170 n.8 (3d Cir. 2014) (internal citations omitted).

Defendant SunPower argues that Plaintiff has made no allegation that there is "any dispute regarding the validity of the Subcontract" between the parties. (SunPower Mot. Dismiss 27). Plaintiff argues, however, that it has alleged fraud in the inducement, which it claims

18

inherently disputes the validity of the Subcontract. (Opp. Br. SunPower Mot. Dismiss 32). Specifically, Plaintiff alleges that Defendant SunPower fraudulently induced Plaintiff into signing the Subcontract by only presenting Plaintiff's principals with the Contract Milestone Schedule ("CMS"), which "depicted a relatively short timeframe for work to be performed by JJD and failed to reflect that much of JJD's work needed to be performed subsequent to intervening work by other subcontractors." (Am. Compl. ¶¶ 13–18).

We agree with Plaintiff that its allegations of fraudulent inducement amount to a dispute over the validity of the Subcontract. Because we have already found that Plaintiff has sufficiently stated a claim for fraudulent inducement, we find that Plaintiff may bring a claim for unjust enrichment in the alternative to its breach-of-contract claim.

To state a claim for unjust enrichment, "a plaintiff must show both that [the] defendant received a benefit and that retention of that benefit without payment would be unjust." *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994) (citations omitted).

Plaintiff alleges that it rendered electrical construction services to Defendant SunPower in accordance with the Subcontract and "upon the promise by SunPower to pay the agreed amount." (Am. Compl. ¶ 82). Plaintiff alleges further that it "demanded payment but SunPower failed to make any payment of the amounts owed." (*Id.* ¶ 85). As such, the Court finds that Plaintiff has sufficiently plead a claim for unjust enrichment because it alleges that Defendant received a benefit and that it would be unjust for Defendant SunPower to retain that benefit without payment. *See VRG Corp.*, 641 A.2d at 526. Accordingly, we deny Defendant SunPower's Motion to Dismiss as to Plaintiff's unjust enrichment claim.

### C. Defendant TotalEnergies' Motion to Dismiss

Defendant TotalEnergies seeks dismissal of the only two claims raised against it: Plaintiff's claims for breach of contract and breach of the covenant of good faith and fair dealing with regard to the Subcontract. Defendant TotalEnergies argues that both claims should be dismissed because it is not a party to the contract, and because Plaintiff has failed to allege privity of contract or that Defendant TotalEnergies breached any terms of the Subcontract. (TotalEnergies Mot. Dismiss 3–4).

Plaintiff bases its allegations of Defendant TotalEnergies' liability solely on a theory of assignment. Plaintiff alleges that it "received notice that SunPower would assign the Subcontract to TotalEnergies as part of an equity sale that closed on May 31, 2022." (Am. Compl. ¶ 35). Plaintiff further alleges that, upon information and belief, "SunPower assigned the Subcontract to TotalEnergies and TotalEnergies assumed liabilities of SunPower under the Subcontract and for claims related to the Subcontract." (*Id.* ¶ 36). Other than these allegations, Plaintiff does not refer to actions involving Defendant TotalEnergies in the Amended Complaint.

We have already established that Plaintiff failed to state claims for breach of contract and breach of the covenant of good faith and fair dealing regarding the Subcontract with respect to Defendant SunPower. It follows that Plaintiff's claims must also fail against Defendant TotalEnergies if Plaintiff's alleged theory of Defendant TotalEnergies' liability is merely that Defendant SunPower assigned its liabilities under the Subcontract to Defendant TotalEnergies— and nothing more. Put simply, because Plaintiff failed to plead the required elements for its contractual claims as to Defendant SunPower, so, too, must they fail against Defendant TotalEnergies under Plaintiff's theory of liability as it is currently pleaded. Accordingly, the Court grants Defendant TotalEnergies' Motion to Dismiss in its entirety.

## V.   CONCLUSION

For these reasons, Defendant SunPower's Motion to Seal is **GRANTED;** Defendant

SunPower's Motion to Dismiss (ECF No. 48) is **GRANTED in part** and **DENIED in part**; and

Defendant TotalEnergies' Motion to Dismiss (ECF No. 50) is **GRANTED**. An Order follows.


Dated:  June 28, 2024

KAREN M. WILLIAMS
United States District Judge